CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/22/2023
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|  |  |  |
|---|---|---|
| ASHLEY BROOKE KOHLER, AS ADMINISTRATOR OF THE ESTATE OF JONATHEN BLAKE KOHLER, DECEASED, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:21CV00028 |
| v. | ) ) | **OPINION AND ORDER** |
| **JONATHAN RICHARD BROWN**, | ) ) | JUDGE JAMES P. JONES |
| Defendant. | ) ) | |

*Samuel E. White, TRI-CITIES LAW FIRM, Kingsport, Tennessee, for Plaintiff; Jim H. Guynn, Jr., and John R. Fitzgerald, GUYNN WADDELL, P.C., Salem, Virginia, for Defendant.*

Following a fatal police shooting, the deceased's representative has sued Jonathan Richard Brown, a police officer with the Bristol, Virginia, Police Department pursuant to 42 U.S.C. § 1983, claiming the unconstitutional use of excessive force. The plaintiff has also asserted pendent state claims for battery and wrongful death. The defendant has moved for summary judgment, invoking qualified immunity. The motion has been briefed and is ripe for decision.[1]

For the reasons explained, I will enter summary judgment for the defendant on all claims.

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

I.

The undisputed facts and the disputed facts viewed in the light most favorable to the plaintiff are detailed below.  The facts are taken from the summary judgment record, including declarations, body-worn camera (bodycam) video, parking lot surveillance video recorded on a closed-circuit television camera (CCTV2), the Dispatch Report, recordings of 911 calls, the Incident Report, and the Autopsy Report.[2]

At approximately 3:17 a.m. on March 30, 2021, defendant Officer Brown, and fellow officers John Carty, Christopher Stine, Erik Hinchey, and Timothy Sizemore, were together when a 911 operator notified them of calls about gunshots received from motel guests in building 120 at the Rodeway Inn.  One caller reported seeing a white or silver Toyota pickup truck leaving the area after hearing the shots.  Another caller who lived nearby heard the shots and saw a silver Ford pickup truck with farm tags and a loud motor leaving the area.  Brown requested that a BOLO (be-on-the-lookout) warning be issued so that officers in the adjacent city of Bristol, Tennessee, would be aware of the descriptions.

---

[2]  The plaintiff objects to two of the exhibits the defendant attached to his brief.  Those exhibits are a video from a different surveillance camera, CCTV1, showing the deceased firing a gun while in his car before the officers arrived and text messages exchanged between Kohler and his girlfriend Summer Cook, in which he admitted shooting up the motel.  Mem. Supp. Mot. Summ. J. Ex. 5, CCTV1, and Ex.10, Cook Text Messages, ECF Nos. 43-5 and 43-10.  In evaluating the reasonableness of an officer's actions on the scene, "the use of hindsight must be avoided."  *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).  I thus have not considered those exhibits in reaching my decision to grant summary judgment.

After the dispatcher's notification, the officers, including defendant Brown, travelled to the Rodeway Inn in separate patrol cars.  Stine responded first and Cary went with him to provide backup.  Hinchey, Sizemore, and Brown followed shortly thereafter to provide additional backup  Carty and Stine carried their department-issued rifles.  Brown carried his personal AR-15 style rifle.  Sizemore had his department-issued pistol.  They approached building 120 with their weapons drawn and encountered a white male who they quickly determined was not the shooter and not a threat.  Stine and Sizemore continued to clear the courtyard of the motel while Carty and Brown entered a breezeway that led to the motel's back parking lot.  Carty and Brown noticed a red Ford Mustang in a parking space with a white male, who would later be identified as Kohler,[3] the deceased, in the driver's seat.[4]

The events that followed occurred within a span of approximately two minutes.  As shown by the CCTV2 video, within two seconds, Kohler put the car in reverse, and started to back out of the parking space.  Carty shined the light on the car, held up his hand, and directed Kohler to stop.  Kohler complied and Carty

---

[3] Mem. Supp. Mot. Summ. J. Ex. 6, ECF No. 43-6.  This video shows the bulk of the events, which I detail in chronological order with references to the time stamps in an Appendix to this Opinion.

[4]  The plaintiff estate administrator will be referred to herein as the "plaintiff," while the deceased will be referred to as "Kohler" or the "deceased."

approached Kohler, whose window was rolled down, and he explained the reason for the officers' presence.  Kohler immediately denied being the shooter.  He appeared intoxicated and nervous, sweating profusely with bloodshot eyes and dilated pupils, according to Officer Cary. Carty asked for Kohler's identification and Kohler provided it.  Carty took Kohler's driver's license and then walked to the rear of the car, but he did not stand directly behind it.  He called dispatch, relaying the information from Kohler's driver's license.   Meanwhile, Stine replaced Carty at the driver's side door, shining a light into the car.  While Carty checked Kohler's identification, the officers repeatedly instructed Kohler to stop reaching for things in his car and to keep his hands visible.  Brown moved to the passenger side of the car and also shined a light inside the car.

Carty returned with Kohler's license.  He told Kohler to get out of the car. When Kohler asked for a reason, Carty answered because he had told him to do so. Kohler refused.  He informed the officers he was leaving, and then he rolled the window up.  Stine ordered Kohler to roll the window down.  Kohler did not comply.  Instead, he started slowly backing out of the parking space.  Stine and Brown aimed their weapons at Kohler and Carty shouted a warning at the two officers about crossfire.  Stine used the muzzle of his gun  to repeatedly strike the driver's side window.  Kohler continued to drive the car in reverse, turning the wheels as he backed.  Brown walked in the same direction as the vehicle, toward

the center of the parking lot.  Kohler stopped, with the car facing the only exit from the parking lot.  Cars were parked on both sides exit, leaving Kohler a narrow path of escape.  Carty moved into a position that placed him in front of the car, alongside Brown.  The front of Kohler's car was approximately fifteen feet away from the officers.  He accelerated in their direction and Brown immediately fired shots from his rifle at Kohler through the windshield.  The car continued to move forward and to the right, running into a parked vehicle and stopping, with Kohler slumped over, eyes closed.  One of the officers can be heard on a bodycam video saying, "He's dead."

In time, paramedics arrived and confirmed Kohler's death.  Afterwards, a handgun and spent cartridges were found in the car.  An autopsy revealed that Kohler sustained gunshot wounds to his head and neck, resulting in brain injuries, skull fractures, and extensive neck injuries.  A medical examiner concluded that Kohler had died from his injuries.[5]

---

[5] In accordance with *Waterman*, I have not considered the loaded handgun and spent cartridges found after the shooting in Kohler's car.  Also, I have not considered the presence of methamphetamine reported on Kohler's post-mortem toxicology test.  Officer Brown was criminally charged with homicide as a result of Kohler's death but acquitted by a jury. *Bristol police officer found not guilty in murder case*, WCYB-TV, Apr. 27, 2022, https://wcyb.com/news/local/bristol-virginia-police-officer-to-not-testify-in-murder -case.

II.

The plaintiff asserts claims against Brown under 42 U.S.C. § 1983 for excessive force in violation of the Fourth and Fourteenth Amendments, as well as a state law wrongful death claim pursuant to Va. Code. Ann. § 8.01-50, and a common law battery claim. Brown has moved for summary judgment, arguing the following: (1) that the Fourteenth Amendment is not applicable because its prohibitions against excessive force applies to pretrial detainees or arrestees, and Kohler had not been arrested; (2) that the use of force was objectively reasonable under Fourth Amendment analysis; (3) that he is entitled to qualified immunity if there was a violation of the Fourth Amendment because he did not violate a clearly established right; and (4) that the state law claims fail because Brown was legally justified in using reasonable force, and that he is entitled to good faith immunity under state law.

The plaintiff's response appears to concede that the Fourteenth Amendment does not apply.[6]   The plaintiff contends that the officers violated the Fourth

---

[6]   I agree that the Fourteenth Amendment does not apply. If a suspect has been arrested, then the Fourteenth Amendment governs excessive force claims. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). While seemingly conceding that the Fourth Amendment, rather than the Fourteenth Amendment, applies before or during an arrest, Kohler points to the Fourth Circuit's acknowledgment in *Orem* that "[t]he point at which Fourth Amendment protections end and Fourteenth Amendment protections begins is often murky." *Id.* However, the Fourth Circuit drew a bright line between a person who experiences excessive force after an arrest versus a person who experiences such force as the target of an investigation or during the course of an arrest. *Id.* Only the Fourth

Amendment because the force was not objectively reasonable under the circumstances, that Brown is not entitled to qualified immunity because his conduct contravened clearly established law, that the state claims are viable because Brown's use of force was not reasonable, and that he is not protected from suit by good faith immunity.  The plaintiff's position stands on three points of disagreement.  First, the parties dispute Kohler's rate of speed and whether Brown could have avoided danger by moving out of the car's path.  Second, Kohler questions whether the decedent had homicidal intent.  Third, Kohler argues that Brown obviously panicked, causing him to shoot Kohler.

Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court must consider the summary judgment record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed by the parties.  *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material if "its existence or non-existence could result in a different jury verdict." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."

---

Amendment governs claims of excessive force that happened during an investigatory detention or the course of an arrest.   *Id.*

*Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).[7]  Irrelevant

factual disputes are not considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

At the summary judgment stage, the movant bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477

U.S. at 323.  The burden then shifts to the nonmovant to establish a specific

material fact in dispute.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87 (1986).  Courts view the facts and draw all reasonable inferences

in favor of the nonmovant.  *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir.

2013).  However, "the nonmoving party must rely on more than conclusory

allegations, mere speculation, the building of one inference upon another, or the

mere existence of a scintilla of evidence."  *Johnson v. United Parcel Serv., Inc.*,

839 F. App'x 781, 783 (4th Cir. 2021) (unpublished).  The jury, rather than the

judge, determines credibility, weighs evidence, and draw inferences from the facts.

*Anderson*, 477 U.S. at 255.

### III.

Defendant Brown contends that he is entitled to qualified immunity with

respect to the plaintiff's § 1983 claim.  Federal law shields  police officers from

civil liability as long as their conduct does not violate clearly established law that a

---

[7]  I have omitted internal quotation marks, citations, and alterations here and
throughout this opinion unless otherwise noted.

reasonable officer should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection ensures that officers are liable for only clear transgressions instead of bad guesses in situations where the law is unclear. *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Qualified immunity is immunity from suit, not just from liability; therefore, the question of qualified immunity must be decided before trial. *Id.* A court deciding the applicability of qualified immunity must apply a two-step test. The prongs of this test need not be decided in a particular order. *Hensley ex rel. N.C. v. Price*, 876 F.3d 573, 580 (4th Cir. 2017). The court must determine whether a constitutional violation occurred and whether the right violated was clearly established. *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).

I start with the first prong of the analysis, whether there was a violation of Kohler's constitutional rights. A claim that a law enforcement officer used excessive force must be analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness inquiry is an objective one, examining whether a reasonable officer would have concluded that an existing threat made the force used necessary under the totality of those circumstances. *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). I must determine whether the defendant's actions were objectively reasonable without using hindsight, and with the understanding that law enforcement officers

are often forced to make split-second decisions under rapidly evolving circumstances. *Id.* I will consider the information available to Brown immediately before and at the moment he began shooting. *Hensley*, 876 F.3d at 582. Three factors guide the determination: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest." *Knibbs ex rel. Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022).

The first factor, the severity of the crime, requires considering the criminal activity that the officers witnessed and the crimes that had been reported. *Moody v. City of Newport News*, 193 F. Supp. 3d 530, 548 (E.D. Va. 2016). The undisputed evidence shows that the officers initially stopped Kohler because they were investigating reported gunshots at that location, and they were looking for the shooter. The dangerous nature of the suspected criminal activity was serious. The situation grew more concerning when Kohler attempted to flee by driving toward two officers standing in front of his car, blocking his path to an exit. *Russell*, 247 F.3d at 132 (finding that the initially suspected criminal activity at issue when an officer approached a suspect became irrelevant when the officer reasonably believed the suspect posed a deadly threat). *Knight ex rel. Graham v. City of Fayetteville*, 234 F. Supp. 3d 669, 686 (E.D.N.C. 2017) (finding a police officer's changed perspective about a fluid situation reasonable where a suspect fled while

possessing a firearm, making an already serious situation a grave risk).  Reports of

gunshots at an occupied motel suggested a serious crime was afoot.   Kohler's

interaction with the officers, his noncompliance, and driving his car in the officers'

direction would have led reasonable officers to conclude that Kohler was on the

verge of committing a more serious crime while fleeing.

I now turn to the third factor, resistance, and flight.  Kohler refused to exit

his car and then attempted to use that car to flee.  Although Carty asked Kohler to

leave his car, Kohler's interaction with the officers had not yet progressed to an

active arrest.  The video evidence shows that Kohler started to flee from officers

who ordered him to stop, banged on his window, and trained their guns on him.

This factor favors the defendant.

Although the first and third factors are instructive, the defendant's claim to

qualified immunity rests on the second factor — whether Kohler posed an

immediate threat to their safety or to the safety of others.  I recognize that the

parties dispute certain facts in this case: (1) whether Kohler was driving slowly and

whether the officers could have avoided danger by moving out of the way of the

car rather than shooting him, (2) whether Kohler had homicidal intent, and (3)

whether Brown panicked before shooting Kohler.  These issues go directly to the

second factor.   The plaintiff argues that these disputed facts could lead a

reasonable jury to find that the defendant did not have probable cause to suspect

Kohler posed an immediate threat of serious physical harm at the moment the defendant actually used deadly force. I disagree.

The plaintiff has proffered no evidence that directly controverts the officers' declarations or the videos that support Brown's claim that he did not open fire until Kohler drove the car in the officers' direction. The officers blocked his path to the exit. He stopped and then intentionally drove forward despite the officers standing in front of his car with Brown aiming a rifle at him. Even if Kohler was driving slowly, the officers could not discount that at any moment Kohler could accelerate. A reasonable officer would interpret Kohler's actions as a threat of serious bodily harm. For the same reasons, whether Kohler had homicidal intent or whether Brown panicked is immaterial. I find that any contested facts do not constitute *genuine* disputes of *material* fact. Even accepting the plaintiff's version of the events, *Hensley ex. rel. N.C.*, 876 F.3d at 579, the second factor favors the defendant.

I must view the facts from the defendant's perspective at the time of the incident to determine objective reasonableness, *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994), based on whether the defendant had probable cause to believe Kohler posed a serious threat of harm when he used deadly force, *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). The fact that a suspect merely fled from law enforcement is not enough to justify using deadly force. *Tennessee v. Garner*,

471 U.S. 1, 11 (1985). Furthermore, a suspect's possession of a weapon does not justify using deadly force. *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). A police officer may only use deadly force when the officer reasonably determines that the fleeing suspect is threatening the officer or another person with a weapon. *Id.*

A hypothetically reasonable officer in Brown's situation would have probable cause to believe that Kohler posed a threat of serious physical harm to himself and to the other officers when he used deadly force. That officer could reasonably conclude that Kohler was threatening them with a weapon — his car. After backing out of the parking space and then turning the automobile to face the exit, Kohler saw the two officers positioned in front him. Brown's weapon was drawn. The officers shouted for Kohler to stop while banging on his car window. Nevertheless, Kohler drove forward. At that point, an officer would have probable cause to conclude that Kohler and his car posed a threat of serious bodily injury to the officers. *Waterman*, 393 F.3d at 478–479 ("While reasonable officers would have recognized the possibility that Waterman intended only to accelerate *by* them rather than *at* them, they also — in the instant they had to decide — could have interpreted the acceleration in the face of their show of force as the initiation of a second attempt by Waterman to avoid capture by using his vehicle as a weapon against law enforcement personnel."); *Pace v. Capobianco*, 283 F.3d 1275, 1282

(11th Cir. 2002) ("By the time of the shooting, Davis had used the automobile in a manner to give reasonable policemen probable cause to believe that it had become a deadly weapon with which Davis was armed.")

The undisputed video evidence and Brown's Declaration establishes that the defendant reasonably feared for the safety of those in the immediate vicinity. The motel was open and occupied. Cars were in the parking lot. Behind Brown and Carty, another vehicle had driven onto the parking lot. A fleeing Kohler also posed an imminent threat of serious physical harm to those in and near the motel parking lot. *See Wilson ex rel. T.W. v. City of Bastrop*, 26 F.4th 709, 714 (5th Cir. 2022) ("When Johnson ran, armed and disobeying Green's commands to drop the gun despite the presence of onlookers, Green's use of deadly force became justified.").

I must also consider the fact that Brown had to make an immediate decision about the escalating events and potential for danger. *Waterman*, 393 F.3d at 478. An officer may reasonably expect the worst in the split-second that a noncomplying suspect acts. *Hensley ex rel. N.C.*, 876 F.3d at 585; *Elliott v. Leavitt*, 99 F.3d, 640, 641 (4th Cir. 1996) (noting that the Constitution does not require police officers to gamble on the ultimate danger). Based on the circumstances here, I reject the plaintiff's argument that factual disputes regarding the speed of the car, Kohler's intent, or whether Brown panicked are material and

genuine.  I find that Brown had probable cause to believe Kohler posed a serious threat of harm to him, Carty, and to motel guests and that deadly force was objectively reasonable given the totality of the circumstances.

In any event, Brown is entitled to qualified immunity because he did not violate a clearly established constitutional right.  A right that is well-defined and so sufficiently explained through existing precedent that a reasonable officer would understand that their conduct violates a clearly established right.  *Mullenix v. Luna ex rel. Leija*, 577 U.S. 7, 11 (2015) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The question here is whether precedent clearly established in March of 2021 that the Fourth Amendment prohibited police officers from using deadly force against someone advancing toward the officers in a car after they had ordered the driver to stop.  I find that it did not.

The Fourth Circuit has explained that if an armed suspect fails to stop or to follow other commands, continued movement will raise "objectively grave and serious suspicions."  *Hensley ex rel. N.C.*, 876 F.3d at 585.  In *Waterman*, the Fourth Circuit recognized that the justification for force may change within seconds.  The weapon at issue in *Waterman* was the suspect's car.  393 F.3d at 480.  The officers were entitled to qualified immunity for using deadly force as the car accelerated toward them.  *Id*.  However, once the vehicle had passed the officers, the threat to the officers' safety was eliminated.  Thus, continuing to fire

shots was constitutionally unreasonable. *Id.* at 481. Despite that conclusion, the court held that the officers were entitled to qualified immunity because the unconstitutionality of their actions was not clearly established. Id. 481–482.

Accordingly, the defendant is entitled to qualified immunity.

Kohler also asserts pendent state claims for wrongful death under Va. Code Ann. § 8.01-50 (Wrongful Death Act), and a claim for battery based on excessive force. Parallel state law claims are "subsumed within" federal excessive force claims. *Rowland*, 41 F.3d at 174. Under the Wrongful Death Act, a plaintiff must establish that the decedent's death was caused by a wrongful act, neglect, or default. Va. Code Ann. § 8.01-50(A). A wrongful act lacks justification or excuse. *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994). In Virginia, a battery occurs when there is an unwanted touching, meaning there is no consent, excuse, or justification. *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (citing *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003)).

In the face of legal justification, these claims fail. *Unus*, 565 F.3d at 117. As explained above, the facts viewed in a light most favorable to Kohler demonstrate that Brown's use of deadly force was justified. Officers are allowed to use reasonable force to perform their duties when the officer's conduct is objectively reasonable. Assessing reasonableness requires considering that officers must make quick decisions. *Id.* Using deadly force is objectively reasonable when

a motorist accelerates in an officer's direction. *Waterman,* 393 F.3d at 478; *Bethea v. Hows*er, 447 F. Supp. 3d 497, 513 (E.D. Va. 2020) (finding objectively reasonable for officer to shoot at motorist accelerating in officer's direction); *Colas v. Tyree*, 882 S.E.2d 625, 633 (Va. 2023) (holding deadly force justified if officer reasonably fears death or serious bodily harm).

There were approximately fifteen feet between Kohler's car and the two officers.  Brown had little time to ponder the situation.  Even if Brown could have jumped aside, he could not be sure that Kohler would not strike him.  *Bethea*, 447 F. Supp. 3d at 513 (officer not standing directly in the path of accelerating vehicle was close enough that "one turn of the wheel could have resulted in serious injury").  I find that Brown's actions were objectively reasonable, and thus, legally justified. His actions do not amount to an actionable tort.  Given that finding, it is unnecessary to determine if Virginia's good faith immunity doctrine for police action committed based on a mistake of law, but in good faith, applies.  Brown is entitled to prevail as to the Wrongful Death Act and battery claim and I will grant summary judgment in favor of the defendant.

## III.

For the reasons stated, it is **ORDERED** that the Motion for Summary Judgment, ECF Nos. 42 and 44, is GRANTED.   A separate judgment will be entered herewith.

ENTER:   September 22, 2023

/s/  JAMES P. JONES
Senior United States District Judge

APPENDIX

| | Parking Lot Video (CCTV2) |
|---|---|
| **Time** | **Description** |
| 0:12:02 | Kohler drove a red mustang into view of the camera.  He parked in the front row of parking spaces closest to the motel, facing the motel doors. He turned off his car, but he did not get out. The camera angle shows the back of the car. |
| 0:18:15 | The glow of Kohler's cellular phone shone through the rear windshield. |
| 0:18:36 | Two officers, Carty and Brown, arrived at the motel.  They shined their flashlights on the motel wall. |
| 0:18:42 | The police noticed Kohler's car and shined their flashlights on it.  Kohler turned on his car, activating the vehicle's car lights. |
| 0:18:45 | Kohler started backing out of the parking space.  Carty held up his hand, directing Kohler to stop.  Kohler complied. |
| 0:18:46 | Carty walked toward the driver's side of Kohler's car while shining his flashlight on Kohler.  Brown followed him. Carty spoke to Kohler. |
| 0:18:55 | Two more officers, Stine and Sizemore, joined them. |
| 0:19:08 | Carty continued speaking to Kohler who was still seated in the car. |
| 0:19:12 | Brown, holding his rifle, moved to the front of the car, and then walked to the passenger's side. |
| 0:19:15 | Stine, while holding his rifle, joined Carty on the driver's side.  He stood near the front of the car, near the headlight. |
| 0:19:28 | Sizemore, stood behind Stine.  Brown moved to stand beside the passenger side door. |

| | |
|---|---|
| 0:19:33 | Kohler handed Carty his driver's license and then Carty walked to the rear of Kohler's car, standing off to the side of it, but not directly behind it.  Brown shined his flashlight into the car, from back to front. |
| 0:19:46 | While standing at the driver's side window, Stine shined his flashlight into the vehicle. |
| 0:19:48 | Carty studied the driver's license. |
| 0:19:51 | Stine stood beside the driver's side door pointing his rifle toward the ground.  Brown held his rifle pointed toward the ground on the passenger's side. |
| 0:19:57 | Brown raised his rifle and pointed it at Kohler's car. |
| 0:20:01 | Stine pointed with his finger at the car, but he did not raise his rifle.  Brown continued to point his rifle at the car.  Carty was still standing near the rear of the car. |
| 0:20:03 | Brown lowered his rifle and paced near the front of the car on the passenger's side. |
| 0:20:10 | Stine pointed at Kohler again. |
| 0:20:11 | Carty walked back to Kohler.  Stine continued to hold his rifle in the same position, pointed at the ground. |
| 0:20:19 | Carty returned Kohler's driver's license to him and then shined his flashlight into the car again.  At this point, there were three officers standing on the driver's side. |
| 0:20:20 | Stine raised his rifle partially.  Brown continued to point his rifle toward the ground. |
| 0:20:23 | Stine lowered his weapon.  Carty continued to speak with Kohler.  Brown's rifle was still pointed to the ground. |
| 0:20:25 | Brown raised the gun again and pointed it at Kohler. |
| 0:20:26 | Brown looked over his shoulder.  Kohler started backing up his car. |

| 0:20:27 | Carty jogged backward as Kohler drove the car in reverse.  Brown trained his rifle on Kohler.  Officer Stine used his gun to repeatedly bang on the driver's side window. |
| --- | --- |
| 0:20:29 | Carty ran to the front of the car as Kohler continued to back up. |
| 0:20:30 | As the car turned toward the exit, Brown walked so that he stayed in front of the car on the driver's side. |
| 0:20:33 | Stine continued to beat on the driver's side window.  Carty moved to the front of the car on the passenger's side.  The two officers blocked Kohler's path to the exit.  Brown was pointing his weapon at Kohler.  The car stopped. |
| 0:20:34 | Kohler drove forward, in the direction of the two officers. |
| 0:20:35 | Brown fired at least two shots at Kohler and then his car veered to the right. |
| 0:20:37 | The car crashed into a parked van, and the car's airbags deployed.  Officers approached Kohler's driver's side door and determined he was dead. |
|  |  |